**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| DAWN SCHLOTE, ) | |
| ) | CASE NO.  1:11-cv-01735 |
| Plaintiff, ) | |
| ) | |
| v. ) | MAGISTRATE JUDGE GREG WHITE |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of Social Security ) | **MEMORANDUM OPINION & ORDER** |
| ) | |
| Defendant. ) | |

Plaintiff Dawn Schlote ("Schlote") challenges the final decision of the Commissioner of Social Security, Michael J. Astrue ("Commissioner"), denying Schlote's claim for a Period of Disability ("POD") and Disability Insurance Benefits ("DIB"), under Title II of the Social Security Act ("Act"), 42 U.S.C. §§ 416(i), 423 *et seq*.  This matter is before the Court pursuant to 42 U.S.C. § 405(g) and the consent of the parties entered under the authority of 28 U.S.C. § 636(c)(2).

For the reasons set forth below, the final decision of the Commissioner is VACATED and the case is REMANDED for further proceedings consistent with this opinion.

**I.  Procedural History**

On August 26, 2008, Schlote filed an application for POD and DIB alleging a disability onset date of March 21, 2007.  Her application was denied both initially and upon

reconsideration. Schlote timely requested an administrative hearing.

On April 7, 2010, an Administrative Law Judge ("ALJ") held a hearing during which Schlote, represented by counsel, testified. Joseph J. Kuhar, Jr., testified as an impartial vocational expert ("VE"). On June 8, 2010, the ALJ found Schlote was able to perform a significant number of jobs in the national economy and, therefore, was not disabled. The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied further review.

## II. Evidence

### Personal and Vocational Evidence

Age thirty-nine at the time of her administrative hearing, Schlote is a "younger" person under social security regulations. *See* 20 C.F.R. § 404.1563(c). Schlote has limited ninth grade education and past relevant work as a pet store worker/cashier, veterinary tech, and animal shelter worker. (Tr. 23.)

### Hearing Testimony

At the hearing, Schlote testified as follows:

- She lives with her husband and 12-year-old daughter. (Tr. 42.)

- She completed the ninth grade and never obtained a GED. She can read, write, and perform basic math. (Tr. 42.)

- She has a driver's license, but rarely drives. (Tr. 43.)

- Her last job was at a veterinary clinic inside a PetSmart, where she was a veterinarian assistant/technician for ten years. (Tr. 43-44.) She stopped working when she could no longer tolerate the standing, walking, and lifting requirements of the job, causing her to be absent frequently. (Tr. 44.)

- On a typical day, she takes her stomach medication, sits for a bit, eats breakfast, and then showers. Following that, she lays down for 45 minutes. She does

>     laundry and then sits again and watches television.  Her husband helps her prepare dinner.  She spends the remainder of the evening laying down.  (Tr. 46.)
>
> •   Her husband and daughter do all the cleaning and all the "big grocery" shopping.  (Tr. 47.)
>
> •   She rarely leaves the house, but attends meetings of a flower club once a month.[1]  (Tr. 47.)
>
> •   She has difficulty sleeping due to pain.  (Tr. 48.)
>
> •   She believes her biggest problems are pain in her back, feet, legs, and hands.  (Tr. 48.)
>
> •   She takes 600 milligrams of Motrin for her pain and occasionally a muscle relaxer.  She testified that her doctor does not believe in pain medications, and Ibuprofen is the strongest medicine he is willing to prescribe.  (Tr. 49.)
>
> •   She was prescribed Lyrica in the past for depression, but it made her very sick.  (Tr. 49.)
>
> •   She received cortisone shots in her hands on a few occasions to treat her pain.  (Tr. 50.)
>
> •   She had been seeing her primary care doctor – Dr. Namey – for seven years.  (Tr. 50-51.)
>
> •   She had seen her rheumatologist, Dr. Mandell, two to three times.  (Tr. 51.)
>
> •   She did not believe that she could perform a sedentary job with a sit/stand option because she needs a lot of breaks and needs to be able to lay down.  (Tr. 52.)

---

[1]  During a consultative examination performed by Margaret Zerba, Ph.D., on January 24, 2009, Schlote described her typical day as "I grow orchids.  It's something positive.  I grow different kinds.  I feel it's a way to preserve the species of plants that I grow....  I'm the Vice-President of the Cleveland Orchid Society.  I do some household chores, but I have a lot of breaks.  I don't do anything heavy.  We have a lot of pets.  We have two boa constrictors and several lizards.  When I was age 16 I started rescuing wolves....  I feed them dog food.  There's one male wolf that stays in the house.  My husband does all the heavy work with animals.  I have a few friends.  I'm in pain most of the time.  I have to be careful because when I have a good day I overdo the good days and think oh now I can get this done, and then I'm down for several days."  (Tr. 218-19.)

> The ALJ posed the following hypothetical question to the VE:
>
> I want you to assume that the individual is 39 years of age, has a ninth grade education and past work as described in the record. For the first hypothetical, I want you to assume that this individual is capable of sedentary exertion as defined by Social Security regulations with additional limitations that this individual would need to be able to alternate three hours between sitting and standing.

(Tr. 54.)

The VE testified that there were a number of jobs such an individual could perform, including surveillance system monitor and routing clerk. (Tr. 54-55.) If, however, 30 to 45 minute breaks two to three times in an eight hour shift were also required, the hypothetical person would not be employable. *Id*. Schlote's counsel asked the VE to assume the same hypothetical as first put forth by the ALJ with the following additional limitations: (1) only occasional reaching in all directions, including overhead, (2) occasional performance of gross manipulation, and, (3) rare pushing or pulling. (Tr. 55-56.) The VE testified that such an individual could not perform any jobs. (Tr. 56.)

### III. Standard for Disability

In order to establish entitlement to DIB under the Act, a claimant must be insured at the time of disability and must prove an inability to engage "in substantial gainful activity by reason of any medically determinable physical or mental impairment," or combination of impairments, that can be expected to "result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. §§ 404.130, 404.315 and 404.1505(a).[2]

---

[2] The entire process entails a five-step analysis as follows: First, the claimant must not be engaged in "substantial gainful activity." Second, the claimant must suffer from a "severe impairment." A "severe impairment" is one which "significantly limits ... physical or mental ability to do basic work activities." Third, if the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the

A claimant is entitled to a POD only if: (1) she had a disability; (2) she was insured when she became disabled; and (3) she filed while she was disabled or within twelve months of the date the disability ended. 42 U.S.C. § 416(i)(2)(E); 20 C.F.R. § 404.320.

Schlote was insured on her alleged disability onset date, March 1, 2007, and remained insured through the date of the ALJ's decision, June 8, 2010. (Tr. 20.) Therefore, in order to be entitled to POD and DIB, Schlote must establish a continuous twelve month period of disability commencing between these dates. Any discontinuity in the twelve month period precludes an entitlement to benefits. *See Mullis v. Bowen,* 861 F.2d 991, 994 (6th Cir. 1988); *Henry v. Gardner*, 381 F. 2d 191, 195 (6th Cir. 1967).

### IV. Summary of Commissioner's Decision

The ALJ found Schlote established a medically determinable, severe impairment, due to fibromyalgia. However, her impairment did not meet or equal one listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. Schlote was found incapable of performing her past relevant work, but was determined to have a Residual Functional Capacity ("RFC") for a limited range of sedentary work. The ALJ then used the Medical Vocational Guidelines ("the grid") as a framework and VE testimony to determine that Schlote is not disabled.

### V. Standard of Review

This Court's review is limited to determining whether there is substantial evidence in the

---

impairment, or combination of impairments, meets a required listing under 20 C.F.R. § 404, Subpt. P, App. 1, the claimant is presumed to be disabled regardless of age, education or work experience. 20 C.F.R. §§ 404.1520(d) and 416.920(d)(2000). Fourth, if the claimant's impairment does not prevent the performance of past relevant work, the claimant is not disabled. For the fifth and final step, even though the claimant's impairment does prevent performance of past relevant work, if other work exists in the national economy that can be performed, the claimant is not disabled. *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990).

record to support the ALJ's findings of fact and whether the correct legal standards were applied. *See Elam v. Comm'r of Soc. Sec.*, 348 F.3d 124, 125 (6th Cir. 2003) ("decision must be affirmed if the administrative law judge's findings and inferences are reasonably drawn from the record or supported by substantial evidence, even if that evidence could support a contrary decision."); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983). Substantial evidence has been defined as "[e]vidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966); *see also Richardson v. Perales*, 402 U.S. 389 (1971).

The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. *Buxton v. Halter*, 246 F.3d 762, 772-3 (6th Cir. 2001) (*citing Mullen*, 800 F.2d 535, 545 (6th Cir. 1986)); *see also Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999) ("Even if the evidence could also support another conclusion, the decision of the Administrative Law Judge must stand if the evidence could reasonably support the conclusion reached. *See Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997).") This is so because there is a "zone of choice" within which the Commissioner can act, without the fear of court interference. *Mullen*, 800 F.2d at 545 (*citing Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984)).

In addition to considering whether the Commissioner's decision was supported by substantial evidence, the Court must determine whether proper legal standards were applied. Failure of the Commissioner to apply the correct legal standards as promulgated by the regulations or failure to provide the reviewing court with a sufficient basis to determine that the

Commissioner applied the correct legal standards are grounds for reversal where such failure prejudices a claimant on the merits or deprives a claimant of a substantial right. *See White v. Comm'r of Soc. Sec.*, 572 F.3d 272 (6th Cir. 2009); *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2006).

## VI. Analysis

*Treating Physician/Fibromyalgia*

Schlote asserts that the ALJ failed to ascribe appropriate weight to the opinion of her treating physician, Michael J. Namey, D.O. (ECF No. 15 at 9-12.) Specifically, Schlote points to a Medical Source Statement completed by Dr. Namey on August 13, 2007.[3] (Tr. 293-94.)

Under Social Security regulations, the opinion of a treating physician is entitled to controlling weight if such opinion (1) "is well-supported by medically acceptable clinical and laboratory diagnostic techniques" and (2) "is not inconsistent with the other substantial evidence in [the] case record." *Meece v. Barnhart*, 192 F. App'x 456, 560 (6th Cir. 2006) (*quoting* 20 C.F.R. § 404.1527(d)(2)). "[A] finding that a treating source medical opinion . . . is inconsistent with the other substantial evidence in the case record means only that the opinion is not entitled to 'controlling weight,' not that the opinion should be rejected." *Blakley v. Comm'r of Soc. Sec.*,

---

[3] Dr. Namey opined that Schlote's ability to lift and carry were affected to an unspecified degree due to severe spasms. (Tr. 293.) Also, sitting and standing/walking were each limited to 4-5 hours (in 20 minute increments) due to cervical, dorsal, and lumbar pain. *Id*. Schlote could occasionally climb and balance, but rarely/never stoop, crouch, kneel or crawl. *Id*. Dr. Namey further indicated that Schlote could occasionally reach and perform gross manipulation, but rarely/never push or pull. (Tr. 294.) Environmental limitations affected Schlote's ability to be around heights, moving machinery, temperature extremes, and fumes. *Id*. Dr. Namey stated that Schlote required a sit-stand option and additional breaks. *Id*. It was his conclusion that Schlote could not tolerate a full work day due to chronic cervical, dorsal, and lumbar pain. *Id*.

581 F.3d 399 (6th Cir. 2009) (*quoting* Soc. Sec. Rul. 96-2p, 1996 SSR LEXIS 9 at *9); *Meece*, 192 Fed. App'x at 460-61 (Even if not entitled to controlling weight, the opinion of a treating physician is generally entitled to more weight than other medical opinions.) Furthermore, "[t]reating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527 and 416.927." *Blakley*, 581 F.3d at 408.[4]

Nonetheless, the opinion of a treating physician must be based on sufficient medical data, and upon detailed clinical and diagnostic test evidence. *See Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985); *Bogle v. Sullivan*, 998 F.2d 342, 347-48 (6th Cir. 1993); *Blakley*, 581 F.3d at 406 ("It is an error to give an opinion controlling weight simply because it is the opinion of a treating source if it is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or if it is inconsistent with other substantial evidence in the case record.") (*quoting* SSR 96-2p). Moreover, the ALJ is not bound by conclusory statements of a treating physician that a claimant is disabled, but may reject such determinations when good reasons are identified for not accepting them. *King v. Heckler*, 742 F.2d 968, 973 (6th Cir. 1984); *Duncan v. Secretary of Health & Human Servs.*, 801 F.2d 847, 855 (6th Cir. 1986); *Garner v. Heckler*, 745 F.2d 383, 391 (6th Cir. 1984). "Those good reasons must be 'supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that

---

[4] Pursuant to 20 C.F.R. § 404.1527(d)(2), when not assigning controlling weight to a treating physician's opinion, the Commissioner should consider the length of the relationship and frequency of examination, the nature and extent of the treatment relationship, how well-supported the opinion is by medical signs and laboratory findings, its consistency with the record as a whole, the treating source's specialization, the source's familiarity with the Social Security program and understanding of its evidentiary requirements, and the extent to which the source is familiar with other information in the case record relevant to the decision.

weight.'"  *Cole v. Astrue*, 661 F.3d 931, 937-38 (6th Cir. 2011) (*citing* Soc. Sec. Rul. No. 96-2p, 1996 SSR LEXIS 9, at *12 (Soc. Sec. Admin. July 2, 1996)).[5]

According to 20 C.F.R. § 404.1527(e)(1), the Social Security Commissioner makes the determination whether a claimant meets the statutory definition of disability.  This necessarily includes a review of all the medical findings and other evidence that support a medical source's statement that one is disabled.  "A statement by a medical source that you are 'disabled' or 'unable to work' does not mean that we will determine that you are disabled."  *Id*.  It is the Commissioner who must make the final decision on the ultimate issue of disability.  *Duncan*, 801 F.2d at 855;  *Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985); *Watkins v. Schweiker*, 667 F.2d 954, 958 n. 1 (11th Cir. 1982).

The ALJ addressed the opinion of Schlote's treating physician as follows:

> The undersigned fully considered Dr. Michael J. Namey's assessment of the claimant's physical capacity, as Dr. Namey is an osteopath with a treating relationship with the claimant that extends back to the alleged date of disability onset.  Dr. Namey's responses include his opinion that the claimant is only able to stoop "rarely or none" and is not able to tolerate a full workday due to chronic cervical, thoracic, and lumbar spine pain.  He responded that the claimant experiences "severe" pain, needs a sit/stand option, and is able to sit 4 to 5 hours and stand and walk 4 to 5 hours in an 8-hour day.  He did not identify a specific lifting restriction. (Ex. 16-F).  The undersigned affords no more than moderate weight to this opinion.  The undersigned adopted the sit stand option and identified a [RFC] for the exertional demands of sedentary work, which is more restrictive than Dr. Namey's assessment [that] the claimant is able to stand and

---

[5] The *Cole* court explained that "[t]his requirement is not simply a formality; it is to safeguard the claimant's procedural rights.  It is intended 'to let claimants understand the disposition of their cases, particularly in situations where a claimant knows that his physician has deemed him disabled and therefore might be especially bewildered when told by an administrative bureaucracy that []he is not.'"  *Id*. (observing that the requirement safeguards a reviewing court's time, as it permits and meaningful review of the ALJ's application of the treating physician rule.) (quoting *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544-45 (6th Cir. 2004)).

> walk 4-5 hours a day. However, as has been shown, there are minimal findings of physical deficits that would produce pain sufficient to preclude regular and continuous work. The claimant has an active life with a husband, child, house, orchid society, and numerous pets, takes no narcotic medications, has not required anything other than conservative care, and seeks treatment only on an occasional basis.

(Tr. 23.)

The ALJ essentially incorporated Dr. Namey's opinion as it relates to Schlote's ability to sit/stand/walk, including a sit/stand option. (Tr. 23.) Nonetheless, Schlote argues that the ALJ does not explain why he rejected the additional limitations found by Dr. Namey – only occasional reaching and gross manipulation, rarely or never pushing/pulling, and the need for additional breaks. (ECF No. 15 at 11.) Based on the VE's testimony in response to the cross-examination of Schlote's counsel, had these additional limitations been credited, Schlote would have been unemployable. (Tr. 55-56.) The ALJ did not explicitly state that he was rejecting these restrictions, but implicitly did so as they were not incorporated into the RFC. The Commissioner argues that the ALJ did not credit these other restrictions because, as explained by the ALJ, they were not supported by objective medical tests, Schlote's daily activities, or the conservative course of treatment. (ECF No. 17 at 10-11.)

Fibromyalgia "is a medical condition marked by 'chronic diffuse widespread aching and stiffness of muscles and soft tissues.'" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 244 n. 3 (6th Cir. 2007) (*quoting* Stedman's Medical Dictionary for the Health Professions and Nursing at 541 (5th ed. 2005)). Diagnosing fibromyalgia involves "observation of the characteristic tenderness in certain focal points, recognition of hallmark symptoms, and 'systematic' elimination of other diagnoses." *Rogers*, 486 F.3d at 244 (*quoting Preston v. Sec'y of Health & Human Servs.*, 854 F.2d 815, 820 (6th Cir. 1988). CT scans, x-rays, and minor abnormalities "are

10

not highly relevant in diagnosing [fibromyalgia] or its severity." *Id.*; *see also Preston*, 854 F.2d at 820. "[P]hysical examinations will usually yield normal results—a full range of motion, no joint swelling, as well as normal muscle strength and neurological reactions. There are no objective tests which can conclusively confirm the disease; rather it is a process of diagnosis by exclusion." *Id*. at 818. Individuals suffering from fibromyalgia "manifest normal muscle strength and neurological reactions and have a full range of motion." *Rogers*, 486 F.3d at 244 (*quoting Preston*, 854 F.2d at 820).

> Its cause or causes are unknown, there is no cure, and, of greatest importance to disability law, its symptoms are entirely subjective. There are no laboratory tests for the presence or severity of fibromyalgia. The principal symptoms are "pain all over," fatigue, disturbed sleep, stiffness, and--the only symptom that discriminates between it and other diseases of a rheumatic character--multiple tender spots, more precisely 18 fixed locations on the body (and the rule of thumb is that the patient must have at least 11 of them to be diagnosed as having fibromyalgia) that when pressed firmly cause the patient to flinch. All these symptoms are easy to fake, although few applicants for disability benefits may yet be aware of the specific locations that if palpated will cause the patient who really has fibromyalgia to flinch. There is no serious doubt that [the claimant] is afflicted with the disease but it is difficult to determine the severity of her condition because of the unavailability of objective clinical tests. Some people may have such a severe case of fibromyalgia as to be totally disabled from working, Michael Doherty & Adrian Jones, "Fibromyalgia Syndrome (ABC of Rheumatology)," 310 British Med. J. 386 (1995); *Preston v. Secretary of Health & Human Services*, 854 F.2d 815, 818 (6th Cir. 1988) (*per curiam*), but most do not and the question is whether [claimant] is one of the minority.

*Sarchet v. Chater*, 78 F.3d 305, 306-07 (7th Cir. 1996); *see also Preston*, 854 F.2d at 817-18 ("In stark contrast to the unremitting pain of which fibrositis patients complain, physical examinations will usually yield normal results - a full range of motion, no joint swelling, as well as normal muscle strength and neurological reactions. There are no objective tests which can conclusively confirm the disease; rather it is a process of diagnosis by exclusion and testing of certain 'focal tender points' on the body for acute tenderness which is characteristic in fibrositis

11

patients."); *Swain v. Comm'r of Soc. Sec.*, 297 F. Supp. 2d 986, 990 (N.D. Ohio 2003) ("Because of the nature of fibromyalgia and its manifestations, application of the usual disability analysis is difficult. The first alternative test under the second prong of *Duncan* - medical evidence confirming the severity of the alleged pain - almost never exists.")[6]

It is undisputed that Schlote suffers from fibromyalgia. The ALJ found at Step Two of the sequential evaluation that she suffered from one severe impairment – fibromyalgia. (Tr. 20.) It is incumbent upon the ALJ to apply the correct standard under existing Sixth Circuit precedent. The ALJ, however, with limited analysis, ignored several of Dr. Namey's medical opinions as to Schlote's limitations. First, the lack of "minimal findings of physical deficits" as noted by the ALJ is not unusual, but rather the norm in fibromyalgia cases. As such, the lack of objective medical evidence supporting Schlote's symptoms does not constitute a "good reason" for rejecting Dr. Namey's opinion.

Second, Schlote's "conservative care" and lack of a prescription for narcotic drugs, as described by the ALJ, also does not constitute a legally sufficient reason for discrediting and rejecting the opinion of a treating physician in a fibromyalgia case. *See, e.g., Lawson v. Astrue*, 695 F. Supp. 2d 729, 737-38 (S.D. Ohio 2010) ("[T]he ALJ's critique of 'conservative management' and a lack of surgery are simply inapposite to treating fibromyalgia and its symptoms.") The ALJ has pointed to nothing in the record suggesting that prescribing narcotic pain killers is a standard method of treating fibromyalgia, and second guessing Dr. Namey's

---

[6] However, "the mere diagnosis of fibromyalgia is insufficient to render a claimants complaints of disabling pain credible." *Vlaiku v. Astrue*, 2008 U.S. Dist. LEXIS 64442 (N.D. Ohio Aug. 4, 2008) (*citing Henry v. Gardner*, 381 F.2d 191, 195 (6th Cir. 1967); *Brazier v. Sec'y of Health & Human Servs.*, 61 F.3d 903 (6th Cir. 1995)).

12

reluctance to do so is inappropriate. *See, e.g., Garza v. Astrue*, 2012 U.S. Dist. LEXIS 22077 (C.D. Cal., Feb. 22, 2012) ("[W]hile the ALJ noted trigger point injections as an example of 'more aggressive treatment' that [the physician] did not refer plaintiff to, the ALJ pointed to nothing in the record to show that such treatment is a standard method of treating fibromyalgia.") Schlote testified that Dr. Namey did not believe in treating her with strong pain medication. (Tr. 49.) ALJs are not trained medical experts and it is well-established that they may not substitute their own opinion for that of a medical professional. *See, e.g., Meece v. Barnhart*, 192 Fed. App'x. 456, 465 (6th Cir. 2006) ("[T]he ALJ may not substitute his own medical judgment for that of the treating physician where the opinion of the treating physician is supported by the medical evidence.") (*citing McCain v. Dir., Office of Workers' Comp. Programs*, 58 Fed. App'x 184, 193 (6th Cir. 2003) (citation omitted)); *Pietrunti v. Director, Office of Workers' Comp. Programs, United States DOL*, 119 F.3d 1035, 1044 (2nd Cir. 1997); *Schmidt v. Sullivan*, 914 F.2d 117, 118 (7th Cir. 1990) ("But judges, including [ALJs] of the Social Security Administration, must be careful not to succumb to the temptation to play doctor.")); *accord Winning v. Comm'r of Soc. Sec.*, 661 F. Supp. 2d 807, 823-24 (N.D. Ohio 2009) ("Although the ALJ is charged with making credibility determinations, an ALJ 'does not have the expertise to make medical judgments.'"); *Stallworth v. Astrue*, 2009 WL 2271336 at *9 (S.D. Ohio, Feb. 10, 2009) ("[A]n ALJ must not substitute his own judgment for a physician's opinion without relying on other evidence or authority in the record.") (*quoting Clifford v. Apfel*, 227 F.3d 863, 870 (7th Cir. 2000)). It does, however, appear to be the belief of at least some in the medical community that narcotics should not to be used in the treatment of fibromyalgia. *See, e.g., Bradford v. Metro. Life Ins. Co.*, 2007 U.S. Dist. LEXIS 23964 (E.D. Tenn., Mar. 29, 2007)

(wherein a doctor opined that narcotics are not considered mainstream treatment for fibromyalgia); *cf. Bringe v. Astrue*, 2009 U.S. Dist. LEXIS 51116 (E.D. Wis., Jun. 10, 2009) (doctor advising patient to decrease her dose of narcotic pain medication, indicating that treatment of fibromyalgia was better accomplished with non-narcotic medication such as Prozac or Lyrica). Essentially, the ALJ rejected Dr. Namey's opinion because he did not believe that the medical treatment prescribed by Dr. Namey was sufficiently aggressive. This is tantamount to the ALJ improperly relying upon his own medical opinion as a basis for rejecting restrictions found by a treating physician.

Finally, the ALJ found that Schlote lead an "active life." (Tr. 23.) The ALJ, however, neglected to explain how Schlote's rather minimal and infrequent activities, performed for a limited amount of time despite her allegations of disabling pain, were so inherently inconsistent with the functional limitations found by Dr. Namey. Schlote's ability to place laundry in the washing machine and dryer, occasionally accompany her husband to the grocery store, attend monthly orchid club meetings, care for orchids, and care for exotic pets – though not the heavy chores associated with such care –  does not equal the ability to engage in substantial gainful activity. *See, e.g., Walston v. Gardner*, 381 F.2d 580, 586 (6th Cir. 1967) ("[t]he fact that [a claimant] can still perform simple functions, such as driving, grocery shopping, dish washing and floor sweeping, does not necessarily indicate that this [claimant] possesses an ability to engage in substantial gainful activity. Such activity is intermittent and not continuous, and is done in spite of the pain suffered by [claimant]."); *accord Davisson v. Astrue*, 2011 U.S. Dist. LEXIS 64263 at *29 (N.D. Ohio, June 17, 2011). Simply put, it is unclear how Schlote's activities undermine Dr. Namey's opinion that Schlote can only occasionally reach or engage in

14

gross manipulation and rarely or never push/pull. Also, it is unclear how these activities are inconsistent with the need for additional breaks. "[A court] cannot uphold a decision by an administrative agency ... if, while there is enough evidence in the record to support the decision, the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result." *Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir. 1996). The ALJ did not provide specific and legally sufficient reasons for rejecting the opinion of Schlote's treating physician. Though the ALJ certainly was not categorically bound to accept the opinion of Dr. Namey, the underlying analysis was insufficient under the Administration's procedural rules.

Schlote can be awarded benefits only if proof of her disability is "compelling." *Facer v. Sec'y of Health & Human Servs.*, 17 F.3d 171, 176 (6th Cir. 1994) (the court can reverse the Commissioner's decision and award benefits only if all essential factual issues have been resolved and proof of disability is compelling). When the ALJ misapplies the regulations or when there is not substantial evidence to support one of the ALJ's factual findings and his decision therefore must be reversed, the appropriate remedy is not to award benefits. The Court, therefore, concludes that remand is required under "sentence four" of 42 U.S.C. § 405(g).

## VII. Decision

For the foregoing reasons, the Court finds the decision of the Commissioner not supported by substantial evidence. Accordingly, the decision of the Commissioner is VACATED and the case is REMANDED, pursuant to 42 U.S.C. § 405(g) sentence four, for further proceedings consistent with this opinion.

IT IS SO ORDERED.

<u>/s/ Greg White</u>
U.S. Magistrate Judge

Date: May 31, 2012